# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| KAMRAN BANAYAN, an individual,<br><br>                   Plaintiff,<br>  vs.<br><br>ONEWEST BANK F.S.B.; et al.,<br><br>                   Defendants. | CASE NO. 11cv0092-LAB (WVG)<br><br>**ORDER ON DEFENDANTS' MOTIONS TO DISMISS** |

Perhaps mindful of the burden that the avalanche of (mostly losing) foreclosure cases has been on this Court's civil docket in recent years, and eager to assure the Court that this case isn't one of them, Banayan opens his complaint with an encouraging disclaimer: "This is **not** a suit by a borrower to prevent a foreclosure sale after the borrower borrowed more money from the lender than he could afford to repay, and then defaulted on the Loan." (FAC ¶ 2.)

Banayan is a homeowner, and the Defendants are major players in the mortgage industry. Banayan's claims arise out of a home loan and subsequent foreclosure proceedings, and they are the usual ones: breach of contract, quiet title, rescission, fraud, violations of the Real Estate Settlement Procedures Act and Truth in Lending Act, and so forth. And at 126 pages, 418 paragraphs, and 22 claims thick, Banayan's complaint, with its running commentary of grievances and corresponding lack of focus, reads *exactly* like a

suit brought by a borrower to prevent a foreclosure sale. In any event, now before the Court are the Defendants' motions to dismiss Banayan's complaint for failure to state a claim.

## I. Background

Banayan has owned a home in La Jolla since 1994, and on January 3, 2007, he borrowed $3,412,500 from IndyMac to refinance and extensively remodel it. Banayan owed about $1.5 million on his home at the time, so presumably he intended to spend almost $2 million on his remodel. His loan payments were divided into two phases—a two-year "Construction Phase" during which he'd pay only interest on disbursed funds for remodeling work, and a thirty-year "Permanent Phase" during which he'd pay back principal as well. (*See* FAC ¶¶ 56–61.)

This case only involves the Construction Phase. Banayan's core grievance is that during the second year of the Construction Phase, IndyMac didn't disburse remodeling funds quickly enough when he requested them, and just generally engaged in obstructionist tactics and predatory accounting that stalled Banayan's remodeling efforts and resulted in excess interest and other charges. At the end of it all, Banayan was accused of defaulting on his loan and foreclosure proceedings were initiated by OneWest[1] — even though, he claims, remodeling work "was 98% complete and there were sufficient funds left to complete the project." (FAC ¶ 71bb.) The Court won't catalog Banayan's particular grievances. His complaint does almost too good a job of that, and not in a way that allows for a simple summary. (*See* FAC ¶¶ 73–237.)

## II. Legal Standard

A 12(b)(6) motion to dismiss for failure to state a claim challenges the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering such a motion, the Court accepts all allegations of material fact as true and construes them in the light most favorable to Banayan. *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). To defeat a 12(b)(6) motion, a complaint's factual

---

[1] OneWest acquired Banayan's loan after IndyMac failed and the FDIC was appointed as receiver of its assets. The Court will use OneWest to refer to the parties Banayan groups together as the "Lender Defendants."

allegations needn't be detailed; they must simply be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, "some threshold of plausibility must be crossed at the outset" before a case can go forward. *Id.* at 558 (internal quotations omitted). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. ----, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

While the Court must draw all reasonable inferences in Banayan's favor, it need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotations omitted). In fact, the Court does not need to accept any legal conclusions as true. *Iqbal*, 129 S.Ct. at 1949. A complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotations omitted). Nor does it suffice if it contains a merely formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555.

**III.    Jurisdiction**

Banayan originally filed this case in California Superior Court in San Diego. OneWest removed it because Banayan alleged violations of the Real Estate Settlement Procedures Act, the Truth in Lending Act, the Fair Debt Collection Practices Act, and RICO, which gave rise to subject matter jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367. (Dkt. No. 1 at ¶¶ 5–7.) There is no alleged basis for diversity jurisdiction in this case, and the Court is well within its discretion to dismiss a case for lack of jurisdiction when all federal claims have been dismissed and only state law claims over which it has supplemental jurisdiction remain. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Noyes v. Kelly Svcs.*, 488 F.3d 1163, 1173 (9th Cir. 2007); *Acri v. Varian*, 114 F.3d

/ / /

/ / /

999, 1000 (9th Cir. 1997); 28 U.S.C. § 1367(c). That would certainly be the Court's inclination here, which is why it will address Banayan's federal claims first.[2]

### IV.     TD Service Company

T.D. Service filed a notice of default against Banayan on September 29, 2010. (FAC Ex. 10.) That is the only reason it is a Defendant in this case. As a substituted trustee merely retained to process a nonjudicial foreclosure, it had nothing to do with making the underlying loan or processing the disbursements that are at the core of Banayan's claims against OneWest. Banayan's RICO claim against T.D. is his only claim against the company that arises under federal law.

RICO is a criminal statute. It prohibits four activities. *See* 18 U.S.C. §§ 1962(a)-(d). Banayan's *civil* RICO claim alleges that T.D. has engaged in two of those activities, namely those prohibited by §§ 1962(c) and 1962(d):

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

(*See* FAC ¶ 367b.)

To state a civil claim for a violation of § 1962(c), a plaintiff "must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc). T.D. argues that Banayan can't satisfy the pattern condition because it "was merely retained as trustee to process the foreclosure. A foreclosure can only happen once. There is no threat of multiple foreclosures." (Dkt. No.

///

---

[2] OneWest argues in its motion to dismiss that the Court lacks jurisdiction over this entire case for another reason: Banayan hasn't satisfied FIRREA's administrative claims process. (Dkt. No. 10-1 at 5–7.) Because the plausibility of Banayan's federal claims also presents a jurisdictional issue, the Court will consider them first. In fact, the Court is more inclined to view the exhaustion question as a threshold issue than a jurisdictional one. OneWest did remove this case to federal court, after all, on the ground that jurisdiction exists here.

9 at 12.) That certainly sounds right, but there are other reasons to find Banayan's RICO claim is infirm.

For a civil RICO claim under § 1962(c) to get off the ground, the RICO defendant engaged in racketeering activity has to be distinct from the RICO enterprise engaged in interstate commerce. *See Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir. 1984) ("If [the defendant] is the enterprise, it cannot also be the RICO defendant."); *Wilcox v. First Interstate Bank of Oregon*, 815 F.2d 522, 529 (9th Cir. 1987) (same); *Myers v. Lee*, Case No. 10-CV-131, 2010 WL 3745632 at *3 (E.D. Va. Sept. 21, 2010) ("Courts are in agreement that for the purposes of liability under Section 1962(c), a RICO person must be distinct from the RICO enterprise."). "For the purposes of section 1962(c), RICO plaintiffs must allege a defendant—the 'person' or 'persons'—who is distinct from the 'enterprise' whose business the defendant is conducting." *Sever v. Alaska Pulp. Corp.*, 978 F.2d 1529, 1533 (9th Cir. 1992).

Banayan accuses T.D. of engaging in theft, attempted theft, forgery, extortion and money laundering under California law, and of engaging in mail fraud, wire fraud, and money laundering under federal law. (FAC ¶¶ 367a–b.) Those are the alleged predicate acts that constitute a pattern of racketeering activity. The problem is that there's no distinct *enterprise* those acts can be said to serve. Banayan does allege that "Defendants . . . formed a criminal enterprise which during the past ten years depended upon, and which included, hundreds if not thousands of interstate communications . . . intended to . . . defraud," but the allegation is a conclusory one that doesn't get him around this core defect of his RICO claim. (*See* FAC ¶ 365.) That enterprise is simply the aggregate sum of T.D.'s alleged predicate acts, and doesn't operate or function separately from T.D. With this kind of overlap between the defendant engaged in racketeering activity on the one hand, and the enterprise engaged in interstate commerce on the other, neither "has a purpose distinct from the goals and objectives of the other." *See Myers*, 2010 WL 3745632 at *4–5. A civil claim under § 1962(c) is a non-starter.

/ / /

Banayan also can't successfully plead a RICO claim under § 1962(d). The failure of his substantive claim under § 1962(c) forecloses that. *See Odom*, 486 F.3d at 547 (suggesting that § 1962(d) conspiracy claim requires the survival of other substantive RICO claim); *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 551 n.2 (4th Cir. 2001).

For this reason, Banayan's RICO claim against T.D. is **DISMISSED WITH PREJUDICE**.

**V.    OneWest**

Three of Banayan's claims against OneWest arise under federal law: (1) his sixteenth cause of action for violation of RESPA; (2) his seventeenth cause of action for violation of TILA; (3) and his eighteenth cause of action under RICO. For the very reasons articulated above with respect to T.D., the Court finds no basis for a RICO claim against OneWest. This isn't to discount the additional arguments OneWest makes for the dismissal of Banayan's RICO claims. Those arguments—namely, that Banayan hasn't alleged an "enterprise"; that a wrongful foreclosure can't be a predicate act under RICO; and that a single erroneous notice of default doesn't establish the existence of a pattern of racketeering activity—have merit and are certainly another way to attack the claim. The RICO claim against OneWest is therefore **DISMISSED WITH PREJUDICE**.

**A.    RESPA**

Banayan's RESPA claims arise under 12 U.S.C. §§ 2605 and 2607. Section 2607 has a one-year statute of limitations which starts to run from the date of the occurrence of the alleged violation. 12 U.S.C. § 2614. Here, given the nature of the alleged violations — basically, failure to comply with certain disclosure requirements — that start date is the date Banayan's loan closed, January 3, 2007. *See Snow v. First American Title Ins. Co.*, 332 F.3d 356, 359 (9th Cir. 2003). Considering that Banayan didn't file this case until December 10, 2010, it would seem his RESPA claims are obviously time-barred to the extent their basis is § 2607. Banayan doesn't believe so. He argues that "these claims were made within the applicable statute of limitations because they have been effectively tolled through OneWest's

fraudulent scheme." (Dkt. No. 11 at 22.) The Court rejects that bare contention. The only legal authority Banayan offers for the tolling of a RESPA claim is not on point. He cites *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946), which the Supreme Court decided before RESPA was passed. (Dkt. No. 11 at 22.) Moreover, equitable tolling must be *demonstrated*, and Banayan merely *asserts* it without offering any particular facts that explain why it is appropriate here. Banayan's RESPA claim under § 2607 is **DISMISSED WITH PREJUDICE**.

Banayan's RESPA claim under § 2605 is based on OneWest's alleged failure to respond to his "qualified written requests." These claims are subject to a three-year statute of limitations that OneWest concedes may not have run. (Dkt. No. 10-1 at 19.) The qualified written requests, according to Banayan, were his "over a dozen requests that the Lender Defendants review and explain the criteria used to deny Plaintiff's draw requests based on the percentage the project was complete and the percentage the construction funds, as well as with respect to other matters . . . ." (FAC ¶ 346e.) OneWest has two arguments for dismissal. The first is that these requests "concerned the terms and condition of the underlying loan agreement," and, as such, "do not fall within the definition of qualified written requests." (Dkt. No. 10-1 at 19.) The second is that Banayan's requests weren't ever *ignored*; the Defendants just disagreed with them. (Dkt. No. 10-1 at 20.) Indeed, Banayan's seemingly interminable complaint details numerous back-and-forth communications with OneWest that show the parties were in constant communication.

### 1. Qualified Written Request

A qualified written request is a written correspondence that:

> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). For a lender to have an obligation to respond to a qualified written request, the request must seek information "relating to the servicing of a loan." 12

U.S.C. § 2605(e)(1)(A); *see also Consumer Solutions REO, LLC v. Hillery*, 658 F.Supp.2d 1002, 1014 (N.D. Cal. 2009) ("That a QWR must address the servicing of the loan, and not its validity, is borne out by the fact that § 2605(e) expressly imposes a duty upon the loan servicer, and not the owner of the loan."). Banayan takes OneWest's argument to be that his communications with them were not qualified written requests because "Plaintiff was in default and . . . OneWest complied with RESPA's requirements." (Dkt. No. 11 at 22.) That's slightly inaccurate. OneWest's argument is that Banayan's communications weren't qualified written requests because of the nature of their inquiry, namely, they didn't relate to "the servicing of a loan."

RESPA defines servicing as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). What this definition makes clear is that "servicing" relates to payments *received by the lender*, and doesn't contemplate the advancement or disbursements of funds (or "draw requests," as Banayan's complaint refers to his requests for funds) pursuant to a construction loan. What Banayan would like to call qualified written requests were in fact queries calling for, or disputing, an interpretation of the underlying loan agreement. The Court doesn't find them to be qualified written requests relating to "the servicing of a loan," considering how RESPA's defines of "servicing."

**2.  Responses to Qualified Written Requests**

Assuming the Court is wrong, and Banayan's so-called qualified written requests actually related to the servicing of his loan, it would still find that Banayan has not properly alleged a violation of RESPA premised upon OneWest's response to them. A lender has essentially two obligations when it receives a qualified written request relating to the servicing of the loan. First, it "shall provide a written response acknowledging receipt of the correspondence within 20 days." 12 U.S.C. § 2605(e)(1)(A). The parties appear to agree
/ / /

that OneWest at least did this. (Dkt. No. 10-1 at 20; Dkt. No. 11 at 22 ("To allege a RESPA claim, Plaintiff is not required to show that OneWest completely ignored him.").[3]

In addition to acknowledging receipt of a qualified written request, a lender also has an obligation to meaningfully respond to it:

> Not later than 60 days . . . after the receipt from any borrower of any qualified written request . . . and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall - -
>
> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction . . .
>
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes - - -
>
> (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>
> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2)(A)-(B). As OneWest says, Banayan's complaint offers an extremely detailed account of various communications between the two parties. (*See* FAC ¶¶ 80–97, 104–119, 128–29, 134–152, 162–85, 195–211, Exs. 7, 8.)   It's apparent in reviewing this account that OneWest, consistently, not only replied to Banayan but replied to him in some substantive way that would satisfy § 2605(e)(2)(B). It's a RESPA violation for a lender to fail to state reasons for believing a borrower's account is correct; it's no violation, however, to state reasons that the borrower happens to disagree with.

In the portion of Banayan's complaint devoted to his RESPA claim, he doesn't identify any particular qualified written requests to which OneWest's response (or non-response) violated § 2605(e)(2). (FAC ¶ 346e.)  He identifies two responses in his opposition brief, though:

---

[3] Banayan does claim in his complaint that he was ignored, but in his opposition brief his claim shifts to the allegation that OneWest didn't adequately respond to his qualified written requests under § 2605(e)(2)(A)-(C). (FAC ¶ 346e; Dkt. No. 11 at 22–23.)

> For instance in July 24, 2010 and May 17, 2010 responses, OneWest failed to make any adjustments to the account, conduct an investigation, provide a statement of the reasons for which they believed the account of Plaintiff was correct; nor provide contact information for someone to help Plaintiff as required under RESPA.[4]

(Dkt. No. 11 at 23.) The Court construes both of these responses, however, as OneWest's explanation of why they believe their version of Banayan's account is correct. Just because Banayan objects to those explanations doesn't mean he has a RESPA claim. Take the July 10, 2009 response, for example. Banayan claims that on that date he emailed someone named Broyles and said "We need to go over the line items one by one, if you are still refusing to make disbursements due to total Project completion. According to my calculations the total Project completion is 85%." (FAC ¶ 116.) That same date, according to Banayan, Broyles replied

> Kari is out of the office until next week. I have reviewed your most recent inspection and do see progress. As we have previously mentioned we do disburse on overall project completion and the overall completion is now 78.07% per the most recent inspection and your disbursed construction funds are 78.23%. Your percentage complete is strictly derived from your budget, so if you are not going to complete certain items such as the security system and intercom, we should reallocate those funds.

(FAC ¶ 117.) It's hard to see how that response constitutes a failure under § 2605(e)(2)(B)(i) to provide a borrower with a written explanation that includes "a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer." Banayan might not have been happy with the response he got, but it was obviously a response that substantively addressed the issue he raised. It's important to note that the requirements of § 2605(e)(2) are disjunctive. OneWest need only comply with subsections A, B, or C, so if it complied with subsection (B) by stating reasons for its position, that is adequate to avoid a RESPA violation.

---

[4] For the July 24, 2010 response, Banayan references ¶ 117 in his complaint. This paragraph mentions a July 10, 2009 response that he received from OneWest. Skipping ahead in his chronology of communications, the Court doesn't see mention of a July 24, 2010 response. (*See* FAC 186–199.)

There is a bigger picture here. Banayan's complaint details an almost endless stream of communications with OneWest regarding his loan disbursements. It just cannot be that each distinguishable e-mail Banayan sent to OneWest constituted a free-standing qualified written request that it had to respond to in full compliance with § 2605(e)(2). That would completely violate the spirit and purpose of RESPA, which implies there is something uniquely significant about a qualified written request from a borrower that demands a devoted response from a lender. That paradigm is a poor fit for the week-to-week, back-and-forth between a lender and a borrower regarding the minutiae of loan disbursements. Otherwise, borrowers could pretty easily draw a RESPA foul simply by inundating a lender with qualified written requests until they receive a single unsatisfying response.

For the above reasons, Banayan's § 2605 RESPA claim is **DISMISSED WITH PREJUDICE**.

**B.   TILA**

OneWest argues that Banayan's TILA claim is time-barred. The statute of limitations for a TILA claim depends on the relief it seeks. For damages the limitations period is one year and for rescission it is three years, running from the date the loan was executed. *See Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 902 (9th Cir. 2003). Considering that Banayan's loan was finalized on January 3, 2007 and he initiated this case over four years later, on January 14, 2011, his TILA claim is ostensibly time-barred.

Banayan argues that equitable tolling should apply. Certainly, it *can* apply under certain circumstances:

> For these reasons, we hold that the limitations period in Section 1640(e) runs from the date of consummation of the transaction but that the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action. Therefore, as a general rule the limitations period starts at the consummation of the transaction. The district courts, however, can evaluate specific claims of fraudulent concealment and equitable tolling to determine if the general rule would be unjust or frustrate the purpose of the Act and adjust the limitations period accordingly.

/ / /

*King v. State of California*, 784 F.2d 910, 915 (9th Cir. 1986). As with Banayan's § 2607 RESPA claim, however, he simply invokes equitable tolling without offering any kind of explanation as to why it is warranted here. In his complaint, for example, he simply says "The TILA claims alleged herein are within the applicable statute of limitations and have been effectively tolled throughout the Lender Defendants' fraudulent scheme." (FAC ¶ 361.) He offers nothing more in his opposition brief. (*See* Dkt. No. 11 at 22.)

The Court finds no basis for equitable tolling here. In addition to Banayan's own failure to make a specific case for it, the manner in which he pleads his TILA claim lends that claim little credibility. The entire claim is pled in vague language that simply mirrors its legal elements and numerous statutory prerequisites, without any factual details that are specific to this case. *See Iqbal*, 129 S.Ct. at 1949 (holding that a complaint must do more than "tender[ ] naked assertions devoid of further factual enhancement"). Finding no basis for equitable tolling here, Banayan's TILA claim is **DISMISSED WITH PREJUDICE** as time-barred.

## V. Conclusion

Having dismissed Banayan's RICO, RESPA, and TILA claims with prejudice, only state law claims remain over which this Court has supplemental jurisdiction. The Court exercises its discretion to **REMAND** this case to California Superior Court for the adjudication of those claims.

**IT IS SO ORDERED**.

DATED: March 14, 2012

*[signature]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge